UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO POLICY NO. XSZ46404,<br>  Plaintiffs<br><br>v.<br><br>THE MAVERICK STREET REALTY, LLC, TIMOTHY WHITE, RICHARD EGAN,<br>ACORN DEVELOPMENT LLC,<br>AARON DAIGNEAULT,<br>and<br>ELOY ROMERO, HOOBER ALVAREZ, SOSTENES "ANDRES" ALVAREZ, NIDIA C. BONILLA, JOSE MARIA ESPANA, LUISA CARMEN ESPANA ("BUILDING 173 TENANTS")<br>and<br>LOYDA B. HERNANDEZ PACHECO, BETUEL RIOS HERNANDEZ, JORGE M. LOYOLA, MARINA MUNAYLLA, OLGA E. PASCO, KIMBERLY ROMERO,<br>JULIO BARRAGAN<br>("BUILDING 175 TENANTS")<br> and<br>GLENDA SARAVIA, Individually and as Guardian and Next Friend of her Minor Children G.S., B.A. AND M.A., HENRY SUAREZ,<br>CANDY CALIZ SARAVIA, Individually and as Guardian and Next Friend of Her Minor Children J.B., A.B. AND G.B., ANA SARAVIA, ROBERTO BONILLA ("BUILDING 177 TENANTS")<br>  Defendants | C.A. No.: 19-cv-_____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

1390354v.2

This is an action for declaratory relief pursuant to 28 U.S.C. §§2201, 2202 and 1332 to determine the parties' rights, obligations, and liabilities under a commercial general liability policy, Policy No. XSZ46404 issued by Certain Underwriters at Lloyd's, London ("Underwriters") to The Maverick Street Realty LLC relevant to property located at 173-177 Maverick Street, Boston, Massachusetts (the "Property"). This action specifically seeks a determination that Underwriters have no coverage obligations to Defendants The Maverick Realty, LLC, Timothy White, Richard Egan, Acorn Development LLC and Aaron Daigneault under the Policy for the claims made by tenants of the Property, including but not limited to claims related to an August 1, 2015 loss described herein.

## PARTIES

1. Underwriters are business entities organized and existing under the laws of Great Britain and Wales, qualified to transact business in Massachusetts subject to the Commonwealth's excess and surplus lines insurance statutes. None of the individual underwriters of the Policy have citizenship in Massachusetts.

2. The Maverick Street Realty, LLC ("Maverick" or the "Insured") is a Domestic Massachusetts Limited Liability Company, with a principal place of business located at 220 Boylston St., Unit 124, Boston, MA 02116, and a resident agent of Ronald W. Dunbar, Jr., Dunbar Law, P.C., 197 Portland St., Boston, MA 02114.

3. Maverick is the Named Insured under a Policy of Insurance, Policy No. XSZ46404 ("the Policy") issued by Certain Underwriters at Lloyd's, London ("Underwriters") relevant to property located at 173-177 Maverick Street, Boston, Massachusetts (the "Property").

4. Timothy White is a Manager of Maverick with a residential address of 249 Walnut Street, Wellesley, Massachusetts 02481 and a business address of 220 Boylston St., Unit 124, Boston, MA 02116.

5. Richard Egan is a Manager of Maverick with an address of 220 Boylston St., Unit 124, Boston, MA 02116.

6. Acorn Development LLC is a Domestic Massachusetts Limited Liability Company with a principal place of business located at 40 Everett St., Boston, MA 02128 and a resident agent of Aaron M. Daigneault at 40 Everett St., Boston, MA 02128.

7. Aaron M. Daigneault is the sole member of the Acorn with a residential and business address of 40 Everett St., Boston, MA 02128.

8. Acorn served as Maverick's real estate or property manager of the Insured Property.

## OTHER INTERESTED PARTIES

9. Eloy Romero at all times relevant to the Complaint was a tenant of 173 Maverick Street, Unit #1, in East Boston, Suffolk County, Massachusetts.

10. Hoober Alvarez, Sostenes "Andres" Alvarez, and Nidia C. Bonilla at all times relevant to the Complaint were tenants of 173 Maverick Street, Unit #2, in East Boston, Suffolk County, Massachusetts.

11. Jose Maria Espana and Luisa Carmen Espana, at all times relevant to the Complaint were tenants of 173 Maverick Street, Unit #3, in East Boston, Suffolk County, Massachusetts.

12. Loyda B. Hernandez Pacheco, Betuel Rios Hernandez, Jorge M. Loyola, and Marina Munayla, at all times relevant to the Complaint, were tenants of 175 Maverick Street, Unit #2 in East Boston, Suffolk County, Massachusetts.

13. Olga E. Pasco, Kimberly Romero and Julio E. Barragan, at all times relevant to the Complaint, were tenants of 175 Maverick Street, Unit #3 in East Boston, Suffolk County, Massachusetts.

14. Glenda Saravia and Henry Surarez, at all times relevant to the Complaint were tenants of 177 Maverick Street, Unit #2, East Boston, Suffolk County, Massachusetts.

15. G.S., B.A., and M.A. are the minor children of Glenda Saravia and at all times relevant to the Complaint were tenants at 177 Maverick Street, Unit #2, East Boston, Suffolk County, Massachusetts.

16. Candy Caliz Saravia, Ana Saravia, and Roberto Bonilla at all times relevant to the Complaint were tenants at 177 Maverick Street, Unit #3, East Boston, Suffolk County, Massachusetts.

17. J.B., A.B., and G.B. are the minor children of Candy Calix and Roberto Bonilla and at all times relevant to the Complaint were tenants at 177 Maverick Street, Unit #3, East Boston, Suffolk County, Massachusetts

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332, as the plaintiffs are citizens of a foreign state and the amount in controversy exceeds $75,000 exclusive of interest and costs.

19. Venue in this District is proper pursuant to 28 U.S.C. § 1391, in that the defendants or their agents, or certain of them, reside or may be found here, a substantial part of the events giving rise to plaintiffs' claims occurred here, and the defendants transact business here.

**BACKGROUND/FACTUAL ALLEGATIONS**

20. On August 1, 2015, the exterior wall on the Insured Property, located at 173-177 Maverick Street, Boston, Massachusetts, collapsed during re-pointing work being performed by a subcontractor hired by the Insured's real estate manager, Acorn.

21. At the time of collapse, tenants, Defendants in this action, were residing at the Insured Property.

22. In The Maverick Street Realty, LLC, v. Jose Maria Espana, et al. v. Maverick Street Realty LLC, Timothy White, Richard Egan, Acorn Development LLC and Aaron Daigneault, Suffolk Superior Court, Civil Action No. 15-cv-03446, Maverick filed suit to obtain declarations of eviction against the tenants of the Property and the tenants asserted counterclaims against Maverick, and its managers, Timothy White and Richard Egan, as well as against Acorn and Mr. Daigneault (the "Tenants Lawsuit"). The Insured's eviction claims against the tenants have been resolved, but the counterclaims are still active.

23. In the Tenants Lawsuit, the counterclaims against Maverick, White, Egan, Acorn and Daigneault were filed by the Building 173 Tenants on or about July 18, 2017.

24. In the Tenants Lawsuit, the counterclaims against Maverick, White, Egan, Acorn and Daigneault were filed by the Building 175 Tenants on or about October 23, 2017.

25. In the Tenants Lawsuit, the counterclaims against Maverick, White, Egan, Acorn and Daigneault were filed by the Building 177 Tenants on or about July 15, 2017.

26. Underwriters did not receive notice of the counterclaims until May 9, 2018, by letter from counsel for Acorn and Daigneault.

27. Maverick, White and Egan did not provide notice and a claim for coverage until June 7, 2018.

28. In their counterclaim against the Insured, Mr. White and Mr. Egan, the tenants assert claims of negligence, breaches of the warranty of habitability and the covenant of quiet enjoyment, violations of

5

the State Sanitary and Building Codes, interference with and termination of utilities, retaliation, reprisal, conversion of personal property, and negligent hiring and supervision of their property manager.

29. The tenants also assert fraudulent misrepresentation and negligent misrepresentation against the Insured, based on allegation that the Insured fraudulently increased rent on the premise of making repairs that were not made, intentional infliction of emotional distress and violation of M.G.L. c. 93A, for unfair or deceptive acts or practices.

30. In the Tenants Lawsuit, the tenants assert that Acorn was hired to perform construction work at the Insured Property.

31. The tenants assert only negligence against Acorn and Mr. Daigneault for breaching their duty to exercise reasonable care in re-pointing and repairing the wall.

32. Underwriters provided commercial general coverage, pursuant to Certificate No. XSZ46404, for the policy period of 1 December 2014 to 1 December 2015, with a per occurrence limit of $1,000,000 and a general aggregate limit of $2,000,000 ("the Policy").

33. The Policy provides, in relevant part, the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

. . .

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who is an Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies….

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period;

        . . .

**2.**    **Exclusions**

This insurance does not apply to:
. . .

    **j.**    **Damage to Property:**

"Property damage" to:

        **(1)**    Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

        . . .

        **(4)**    Personal property in the care, custody or control of the insured;

        **(5)**    That particular part of real property on which you or any of your contractors or subcontractors on your behalf are performing operations, if the "property damages" arises out of those operations.

        **(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
        . . .

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

. . .

**2.**    **Duties In The Event Of Occurrence, Offense, Claim or Suit**

    **a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)**    How, when and where the "occurrence" or offense took place;

        **(2)**    The names and addresses of any injured persons and witnesses; and

        **(3)**    The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**    If a claim is made or "suit" is brought against any insured, you must:

      **(1)**    Immediately record the specifics of the claim or "suit" and the date received; and

      **(2)**    Notify as soon as practicable.

      You must see to it that we receive written notification of the claim or "suit" as soon as practicable.

  **c.**    You and any other involved insured must:

      **(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      **(2)**    Authorize us to obtain records and other information;

      **(3)**    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      **(4)**    Assist us, upon our request, in the enforcement of any of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

  **d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

. . .

## SECTION V – DEFINITIONS

. . .

**3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .

**17.**    "Property damage" means:
  **a.**    Physical injury to tangible property, including all resulting loss of use of the property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it…

. . .

**22.**    "Your work":

  **a.**    Means:

      **(1)**    Work or operations performed by you or on your behalf; and
      **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

    . . .

**CG 00 01 12 07**

. . .

**CGL BLANKET ENDORSEMENT**

. . .

This endorsement modifies insurance under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

. . .

**C.     Additional Exclusions**

The following exclusions are added to the policy:

    This insurance does not apply to:

    . . .

    **3.     Employees of Independent Contractors**

        "Bodily injury", "property damage", "personal and advertising injury", or any injury, loss or damage:
        . . .

        **b.**     Arising out of operations performed by you by independent contractors or your acts or omissions in connection with your general supervision of such operations.

. . .

    **15.     Breach of Contract**

        This insurance does not apply to "bodily injury", "property damage", "personal injury", "advertising injury" or medical payments arising out of breach of contract, whether written or oral, expressed or applied, implied-in-law, or implied-in-fact contract.

. . .

**D.     Section II – Who is An Insured**

    **1.**     Paragraph **2.** is deleted in its entirety and replaced by the following:

        Each of the following is also an "insured":

        **a.**     Your "employees", other than either your "executive officers: (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.. . .

        **b.**     Any person (other than your "employee"), or any organization while acting as your real estate manager.

        . . .

**UNDERWRITERS AT LLOYD'S, LONDON – LGF01 General Forms**

. . .

## LMA 5018 – ABSOLUTE MICROORGANISM EXCLUSION

This policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:

> Mold, mildew, fungus, spores or other microorganisms of any type, nature or description, including but not limited to any substance whose presence poses an actual threat to human health.

This exclusion applies regardless whether there is (i) any physical loss or damage to insured property; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (i) any action required, including but limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

This exclusions replaces and supersedes any provision in the policy that provides insurance, in whole or in part, for these matters.

. . .

**MOLD & FUNGUS EXCLUSION ENDORSEMENT**
**CNG-E103**

## THIS ENDORSEMENT CHANGES THE POLICY
## PLEASE READ IT CAREFULLY

The policy includes the following exclusion for Mold and/or Fungus

### Mold and /or Fungus Exclusion

This insurance does not apply to any "bodily injury", "property damage", "personal and advertising injury" or any physical loss of or damage to property nor do we have any duty to defend an insured against any "suit" caused  by or contributed to, directly or indirectly, by the presence of (a) mold, (b) any material, product, building or building component containing any mold or contributing to the growth of mold; (c) any solid or liquid substance, vapor, fume or gas arising from or generated by any mold.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

We do not cover any loss, cost or expense arising out of any such claim or "suit" for damages concerning mold regardless of any other cause, event, happening, occurrence that may have also caused, contributed to or aggravated the injury or damage.

This insurance does not cover any loss, cost or expense incurred by any person or entity (including any governmental organization) to test for, monitor, remove, treat or in any way respond to the actual or potential presence of mold.

"Mold" includes but is not limited to mold, mildew, fungi, bacteria, mushrooms, yeasts, dry rot, organisms or micro-organisms of any kind including any spores or other reproductive body produced by or arising out there from.

. . .

CNL-E108 (01-08)

## THIS ENDORSEMENT CHANGES THE POLICY
## PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The policy includes the following exclusion for Fines, Penalties, Punitive or Exemplary Damages:

**Fines, Penalties, Punitive or Exemplary Damages Exclusion Endorsement**

The following exclusion is added to the Policy:

This insurance does not apply to:

> Fines, penalties and punitive or exemplary damages. If a claim or a "suit" is brought against an insured for a claim within the coverage provided under this policy, seeking fines, penalties, compensatory and punitive or exemplary damages, then we shall afford a defense for such action. We shall not, however, have any obligation to pay for any costs, interest or damages attributable to fines, penalties and punitive or exemplary damages.

> If State law provides for statutory multiple damage awards, we will pay only the amount of the award before the multiplier is applied.

. . .

34. The Tenants do not assert in the Tenants Lawsuit claims for "bodily injury" or "property damage" as defined by the Policy, and therefore there is no coverage for their claims.

35. Even if the Tenants assert a claim for "property damage" as defined under the Policy, there is no coverage under the Policy as the Damage to Property exclusion of the Commercial General Liability Coverage Part excludes from coverage "property damage" to property you own, and "property damage" to that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations.

36. To the extent that the claims asserted concern claims for property damage to property owned by Maverick, and arising out of operations performed by a subcontractor on behalf of Maverick, coverage is excluded.

37. In addition, there is no coverage as the Damage to Property exclusion excludes coverage for that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. "Your work" is defined by the Policy as "work or

11

operations performed by you or on your behalf." The work was being performed by a subcontractor of Acorn on Maverick's behalf, and thus coverage is excluded.

38. There is no coverage as the Employees of Independent Contractors exclusion of the CGL Blanket Endorsement provides that the insurance does not apply to property damage "[a]rising out of operations performed by independent contractors or your acts or omissions in connection with your general supervision of such operations." The work was being performed by an independent contractor.

39. The Tenants Lawsuit asserts claims of breach of the warranty of habitability, breach of the covenant of quiet enjoyment, intentional infliction of emotional distress, and fraudulent misrepresentation arising out the Insured's alleged violations of state sanitary and building codes, changing locks, inadequate notice, various conditions of disrepair, rent increases, shutoff of utilities, cross-metering of electricity, lack of water, infestation of mice, roaches and bedbugs, and mold. The tenants also assert a claim for retaliation/reprisal, related to their alleged reporting of the Insured's violations. As to these claims, the tenants assert damages related to the difference in fair market value of the rental units and the actual value of the rental units in their condition, as well as emotional distress. These allegations do not involve "bodily injury" or "property damage," nor were they caused by an "occurrence," so coverage is not triggered under the Policy.

40. The tenants' claims for intentional infliction of emotional distress, fraudulent misrepresentation, conversion, and violation of M.G.L. c. 93A involve intentional conduct which is excluded by the Expected or Intended Injury Exclusion.

41. In the Tenants Lawsuit, the breach of the covenant of quiet enjoyment specifically alleges "willful and intended" conduct, which is also excluded by the Expected or Intended Injury Exclusion.

42. The tenants assert a claim for conversion of their personal belongings. This is excluded by the Expected or Intended Injury Exclusion.

43. The multiple damages sought by the tenants pursuant to M.G.L. c. 93A, such damages are exemplary or punitive damages, which are excluded under the Fines, Penalties, Punitive or Exemplary Damages Exclusions Endorsement.

44. To the extent the tenants assert claims related to mold, they are excluded by the LMA 5018 Absolute Microorganism Exclusion and the Mold & Fungus Exclusions Endorsement CNG – E103.

45. In addition, as part of the claims of breach of the warranty of habitability and the covenant of quiet enjoyment, the tenants assert that there has been asbestos removal, and mice, roach and bedbug infestations, although they do not specifically assert any "bodily injury", "property damage" and damages as a result of these conditions. Regardless, the Additional Exclusions of Asbestos & Silica Dust and Animals of the CGL Blanket Endorsement in the Policy excludes coverage for any claim of "bodily injury," "property damage" or "personal and advertising injury" arising out of asbestos or "animals." The definition of "animals" includes all living organisms capable of movement and sensation, except human beings.

46. The tenants also assert that the Insured intended to force the tenants to abandon their units. This claim does not trigger coverage under the Policy. In addition, even if it did, exclusions apply, including the Knowing Violation of Rights of Another, Contractual Liability and Breach of Contract exclusions.

1390354v.2

## COUNT I – DECLARATORY JUDGMENT AS TO DUTY TO DEFEND

47. Underwriters repeat and re-allege the allegations set forth in paragraph 1 through 33 above, and incorporates these paragraphs by reference as if fully set forth herein.

48. The Policy does not afford coverage to Maverick, White, Egan, Acorn and/or Daigneault with respect to claims brought in the Tenants Lawsuit.

49. Underwriters have no duty under the Policy to provide a defense to Maverick, White, Egan, Acorn and/or Daigneault with respect to claims brought in the Tenants Lawsuit.

## COUNT II – DECLARATORY JUDGMENT AS TO DUTY TO INDEMNIFY

50. Underwriters repeat and re-allege the allegations set forth in paragraph 1 through 36 above, and incorporates these paragraphs by reference as if fully set forth herein.

51. Underwriters have no duty under the Policy to indemnify Maverick, Egan, White, Acorn and/or Daigneault with respect to the claims made in the Tenants Lawsuit.

WHEREFORE, Underwriters request that this Honorable Court declare and adjudge the following:

(1) Underwriters have no duty under the Policy to provide a defense to Maverick, Egan, White, Acorn and/or Daigneault with respect to the claims made in the Tenants Lawsuit.

(2) Underwriters have no duty under the Policy to indemnify Maverick, Egan, White, Acorn and/or Daigneault with respect to the claims made in the Tenants Lawsuit.

(3) All parties are bound hereto by the judicial declarations entered herein, which terminate the instant controversy among the parties; and

(4) Underwriters are entitled to recover other such relief, including legal fees and costs, as the Court deems just and proper.

                                Respectfully submitted,

                                Plaintiffs,

                                CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO POLICY NO. XSZ46404,

                                By their attorneys,

                                <u>/s/ Michele C. Sears</u>
                                Christopher P. Flanagan, BBO# 567075
                                Christopher.Flanagan@WilsonElser.com
                                Michele C. Sears, BBO #655211
                                Michele.Sears@WilsonElser.com
                                WILSON ELSER
                                260 Franklin Street – 14th Floor
                                Boston, MA  02110-3112
Dated: <u>October 4, 2019</u>                (617) 422-5300